This case is U.S.A. v. Handler. Thank you. And you reserve three minutes. Yes. When you're ready, sir. Thank you. May it please the Court. My name is Mark Harris, and I represent the defendant, Martin Handler. A plea agreement is a contract. The exchange is that the defendant agrees to give up his right to trial, and in exchange, the government agrees to favorable sentencing treatment, in most cases, based on agreed-upon facts. Here, the parties stipulated that the loss to HHS was zero and that the loss to one of Mr. Handler's companies was $1.1 million. Once they signed that deal, the government and the defendant were contractually bound to uphold it. Okay, so I want to talk about this first. So the timeline is very helpful to me. You were aware pretty early on that the government's advocacy was going to include information that you think or you're arguing was inconsistent. Why did you not immediately seek relief, either in terms of withdrawing or asking for the case to be reassigned? Because the government repeatedly tried to have it both ways. I'm sorry. Let's be very clear, because one could make the argument that you were taking a gamble, too, and didn't actually only move for it being reassigned once you got a ruling that you didn't like. And what I am hoping to go through is to find where in the process and why it was inappropriate for you to have not sought this relief earlier when there was at least, that I can count, a minimum of two places when they tried to say, wait, what are you trying to do? And you didn't act. So I am concerned about any decision we have here giving the impression that people can have multiple bites at the apple and treat district court judges as having advisory opinions, and if they don't like what they get, they can move for a breach of the plea agreement and go get resentenced by someone else. So what about the timeline do you think would give me comfort that no one would be worried about taking that lesson away? I mean, I think, Your Honor, quite the opposite. We tried at every turn to give the government the chance to retract its statements. There are cases, I think the government cites some of them. Amoco is one example where the court held that if the government takes a position and then retracts it, then in that case maybe the error is harmless. You say the parties stipulated to the loss amount.  Wasn't that for purposes of the guidelines calculation as opposed to what the sentence ought to be? No, Your Honor. These are factual stipulations, and it's quite clear for multiple reasons that they must be. Isn't it often the case that the parties stipulate to a lower guideline loss for whatever the reasons, and then there can be arguments suggesting the loss is something different? Not when it's directly inconsistent. The government and the defense, for that matter, cannot agree that the loss is, let's just say, $1,000 and then go into court and say, by the way, Your Honors, I know we agreed there's $1,000, but it's really $10,000. That would make stipulations meaningless. A fact is a fact, and 6B1.4 A stipulation can't be for a limited purpose? I don't think a factual stipulation can be for a limited purpose. In fact, if anything, the Supreme Court has said You argued for a variance yourself, right? A sentence of a year. This is a key point. There's a difference between situations where one of the parties is arguing or raises other facts that are not part of the agreement. That happens all the time, of course. Somebody mentions that there were charitable contributions that were given or there were charitable works. The government may argue that there's some other factor. But you can't have a contradiction. It can't be that the stipulation is, let's just take the drug case. If the drug case, the government stipulated that there was one deal and there was 50 grams involved, and at sentencing, the government came in and said, By the way, you should know, Judge, we agreed to 50 grams, but it was really 500 grams. Obviously, if they did that, that would be a flat-out contradiction. It would be a breach of the— Go ahead. The stipulated guideline range was 51 to 63 months, right? I think it was higher than that, the stipulated guideline range. I think it was—oh, I'm sorry. Yes, Your Honor. Correct. The stipulated range was 51 to 63. Probation recommended 51 to 63. Forty-two. Sorry. Probation said the range is—the guideline range is 51 to 63 and then recommended a below-guideline sentence of 42. Yes, Your Honor. And you asked for a year and a day, and it's hard for me to see why there is a breach when you knew what the range was, the government argued for something within the range, the court found something within the range. Your Honor, this Court has said in the Babel case—I'm going to read it just because I think it's obviously important to the Court if I can find the case. The Court said in Babel, Whether a breach by sentencing advocacy caused prejudice in the form of an increased sentence is irrelevant to the need for a remedy. It doesn't matter what actually happened. Well, and I want to know why that remedy isn't—wait. The district court expressly said how it was going to consider the evidence and asked you, is that going to be okay? And you said, fine. And it wasn't until you actually got an answer that you didn't like that you moved to have the case reassigned. I think, Your Honor, if we had moved at an earlier point—I mean, this is obviously a dilemma for the part of the defendant. If you raise this too early, you're going to get an argument. You're going to basically annoy the judge. You're going to get an argument that, what do you mean, that's not our position? The government said many times, no, we stand by the stipulations. They also said at the same time, well, but we're not really sure those are the numbers. We're not positive what they are. We're doing our best, but we can't really tell you what they are for sure. We had a catch-22 here, which is that if we went ahead and said there's a breach right now, the government would have said, what do you mean? We're standing by the stipulations. Well, what about when the district court explained how it was going to consider the evidence? You declined reassignment then, right? Like, what was the problem— At what point, Your Honor? At the transcript of the district—at the June 26 conference. At the June 26—we actually asked the—Your Honor, we asked the court. It's in the transcript. We asked the court, please tell the government to stop making these arguments. Right, but you didn't say, I think that this has been so impermissibly argued that Your Honor is going to be prejudiced by it or whatever reasons you have for reassignment. I think it's appropriate now. I think, I mean, Your Honor, this is going to be a sort of damned if you do, damned if you don't. If you raise the argument too early, the argument is going to be, what do you mean? It didn't have any effect on anybody, and we don't stand by that position. We gave the government—I think it's quite the opposite. Most of the cases that the court sees— But you agree that the judge heard it, right? The judge heard all of your arguments that this was improper and tried to craft an argument and granted—or tried to craft a sentence. You disagree with it. What is the injury that you think we can fix that you didn't weigh? So if you look at what happened actually during that transcript, during the sentencing transcript, we asked the court. The court said, well, I won't take this into account in the guidelines analysis. Is that good? Is that good enough? And I said, I want also a statement. The court also says that this won't come into account. The court won't take this into account in any manner at all, in any fashion, in the sentence, and not just for the guidelines. You're not going to dispute the fact that they could consider the 3553A consideration, right? I absolutely contest it. No, Your Honor, that's the whole point. The government cannot say, we understand that the loss is zero for guidelines purposes, but the loss is something else for 3553 purposes. Absolutely cannot do that. Then factual stipulations don't mean anything. It's a stipulation of fact. It's withdrawn from consideration. What about our decision in Granick? In Granick, we held that stipulation does not fix the amount as a matter of law. I'm sorry. I wasn't able to hear that, Your Honor. Can you say that again? We have a case called Granick. Yes. G-R-A-N-I-K. Yes. That even if a defendant and the government agree to a loss amount in the plea agreement, the stipulation does not fix that amount as a matter of law. No, that's a different point, Your Honor. That means the stipulations never bind the court. Of course not. The court is not a signatory to the plea agreement. That's not the point. Granick actually says, Granick's probably our most powerful case on our side because Granick says the government and the defendant may not take a position different from what's agreed to in the plea agreement. That is this case. This case is there was a stipulation of fact, and the government tried to have it both ways. Okay. We're going to hear from you for three minutes. Thank you so much. Good morning. May it please the Court. My name is Daniel Wolf. I represent the government in this appeal, and I represented the government before the district court. As in Rivera, a decision this court issued within the last year, because the plea agreement in this case, which has the exact same provisions that were at issue in Rivera, because this plea agreement reserved for both parties the right to present at sentencing any fact relevant to sentencing and to make arguments concerning consideration of the Section 3553A factors. The government did not breach the plea agreement by arguing at sentencing and asking the court to take into account the length, complexity, and scope of the defendant's offense conduct. I want to take a moment to step back and focus on what the defendant actually pled guilty to, because I think it's relevant to the point that the Section 3553A arguments are different than the guidelines. The defendant himself pled guilty to, among other crimes, participating in a nearly seven-year conspiracy to defraud HHS in HHS's administration of the federal Head Start program. By his own allocution, that conspiracy involved multiple false statements to HHS about the controls in place by a nonprofit organization that the defendant secretly controlled, that that nonprofit had controls in place to guard against less-than-arm's-length dealing. Separately, the defendant pled guilty that for three of those years, misappropriating funds from a company that he owned that itself was receiving federal funds to operate a Head Start program. In total, HHS remitted millions of dollars to the defendant's companies that it would not have remitted but for the defendant's lies. Under the plain language of the plea agreement... But why the stipulation that HHS sustain no loss? Yes, Your Honor. So as we explained multiple times in briefing before the district court and before probation, the guidelines themselves, as this Court is aware, involve a mechanical set of formulas to come up with loss under the guidelines. It's a term of art. Within the plea agreement itself, if you look at the plea agreement, the parties stipulated to the answer to that formula, the answer to that formula, but nowhere did the parties stipulate to sort of the left side of the equal side what the actual formula was. And one of the provisions within the guidelines explains... And the answer to the formula is no loss. The answer to the formula is no loss. However, because the government agreed in this case that it was not going to pursue or make any arguments that services were not rendered with respect to certain of the funds, the government concluded that there was a — the defendant was entitled to a credit for services rendered. It's no different, for example, as we stated in our brief, if a defendant steals a million dollars and then returns the million dollars prior to being caught. The defendant has still committed a crime, but under the guidelines, the loss would be zero. But in a plea agreement that reserves for the parties the right to make 3553A arguments or raise any fact relevant to sentencing, of course under 3553A, the district court can consider that the defendant himself stole a million dollars. That's relevant to the history and characteristics of the defendant. It's relevant to the need for adequate deterrence. It's relevant to the circumstances of the offense. And so consistent with — In other words, even if there's no loss because the money was paid back, there still is the crime of stealing the million dollars. There still is the crime. And as Congress has directed district courts, district courts are required to consider under Section 3553A a host of factors separate and apart from the guidelines. And this particular plea agreement, as this Court has recognized with the same language in Rivera, reserved the rights for the parties to make arguments relating to 3553A, notwithstanding the fact that those arguments, to some degree, may overlap with the guidelines. Okay. I want to just make sure that the government is not asking us to take these principles too far. So is the government's position that a stipulated loss amount in a plea agreement is not a factual stipulation? The stipulation as to the guidelines themselves, as to — the stipulation here, just to step back for a moment, the fact that was stipulated to is, to go back to my analogy before, is the right side of the equal sign. What happens after you — So you're not saying that it's not a factual stipulation? It's, of course, a factual stipulation. And if the government at sentencing had said, I want you to consider, Judge, the full — go back to the million-dollar example. I want you to consider the full scope of the million dollars. And, in fact, I want you to treat it as if he actually stole the million dollars and kept it. That very well could be a breach. But that's, of course, not what happened here. And, in fact, if you look at the record in multiple locations, the very moment that defense counsel alleged a breach in his — the defendant's sentencing submission, the government immediately not only denied that it was advocating for a difference in the guidelines, but, in fact, took the step of explaining why, in fact, the guidelines are not affected at all by the additional evidence. So how do we know that the Section 3553A arguments cannot be so abused or exploited that it would lead to a breach of a plea agreement? What are the limits under the government's theories as to how we can make sure that there's not abuse? So this Court has held in a summary opinion in Robinson, has found an example where there is a limit. In that case, again, same — my understanding is it's the same relevant terms of a plea agreement from the Southern District of New York. The government in that case, as this Court held in a summary order, labeled the defendant there a leader. However, the government did not, in its plea agreement, ask or insist that the defendant stipulate to receiving leadership points under the guidelines. In Robinson, this Court held that because the government labeled the defendant a leader in a conclusory nature without explaining any underlying facts that would make it so he was a leader, and in addition to that, actually prompted the district judge in that case to consider for the first time whether the defendant, in fact, should be receiving leadership points, and then itself prompted the judge to conclude that the defendant — Can I ask, then, maybe — can you articulate what you think the rule is or the words are that don't allow the government to have free reign to advocate for the top of a bargain-for range every time under the guise of 355-3A? Like, how could we make sure that there were some limits to your argument? Well, I think the limits are based on the — as this Court, again, taking Robinson as an example and this Court's other decisions, I think you start with the text of the plea agreement and the defendant's reasonable expectations under that agreement. And here, with this plea agreement, the parties reserved the rights, notwithstanding any guideline stipulation, to make arguments based on the 3553 argument for an upward variance, downward variance, or any sentence in between. And because of that — You couldn't argue for a departure, but you could argue for a benefit. That's exactly right. And I think part of the key here is that we operate in a post-Booker landscape, where the sentencing, as stated in the — as stated in the plea agreement itself, but also as a general practical matter, sentencing here was focused on the 3553 arguments. And again, the government — as this Court held in Helm recently, the government cannot be in breach for doing something that the plea agreement expressly allows it to do. And as I said — Right, but that doesn't really answer the question as to how much work the words that allow for 3553A considerations to swallow the rest of the plea agreement. And your colleague on the other side says this is the case that does, and we may or may not agree. I'm asking for your help in trying to figure out how I can have some comfort that deciding this way is either not going to give defendants the opportunity to have multiple bites at the apple when they don't like what a district court judge has said, and the government doesn't have to abide by anything as long as they call it a 353A consideration. So with some specificity, like, what are the limits on what you think the government can present? Again, I think — I hate to sort of go back, but I think it depends on the actual language of the guidelines and how the mechanical function of the guidelines work. In this case, could the government have argued that HHS, in fact, suffered a loss? Not under our understanding of the facts as they apply to the guidelines. Defense counsel for a moment ago made an argument about how the government would act in a drug case. The drug guidelines are very different and actually are entirely — there is no offset, for example, for credits against loss. And there, in that instance, if the government went to court and said, Your Honor, we know that the guidelines that the parties stipulated that the drug quantity was X, but actually it was X plus 100 and we knew about it all along, I think there the facts that the government is presenting would lead, perhaps, to the inescapable conclusion that the guidelines are actually higher. But that's not what happened here. And so I think it is guideline-specific and I think it is plea agreement-specific as to what the parties have reserved for themselves. I see that my time is out. I'm happy to answer additional questions if the Court has any. Otherwise, as set forth in our brief, we would respectfully request that the Court dismiss this appeal based on the appellate waiver. Thank you. Thank you, Your Honors. Mark Harris for Mr. Handler. I'll go very quickly because I know we only have a few minutes. First of all, let me ask you this. The argument is that for guideline purposes there's no loss because, in essence, there was a credit for services rendered, et cetera. But that doesn't mean that there wasn't a crime and that doesn't mean that money wasn't stolen. How do you respond to that? I want to be very clear about this. The credit theory is wrong and we explained why it's wrong. The credit theory applies in a situation where there is a fraud that's committed but there's some substitute that's given. The example we gave in our brief was if I agree to sell you 10 Cadillacs and I really deliver 10 Honda Civics, you were defrauded out of the value of the Cadillacs, but there is an offset for the Civics because it obviously takes an economic view that the actual loss is the net amount. That's not what happened here. This is not a case where we delivered one deliverable. We promised to do one thing and we did something else. There were millions of dollars obtained through false representations. That's not loss, Your Honor. Let me just give an example. Did that happen? Did that happen? The millions of dollars were issued by HHS based on false pretenses? Yes, and they all went. Is that not in itself a crime? Of course it is, Your Honor. When I'm asking a question, you should wait until I finish asking the question. Is that not still a crime? Absolutely it's a crime, Your Honor. All right, and the government could argue that at sentencing? Absolutely. And not be in breach of the agreement? Absolutely. Okay, go ahead. It's a crime. He pled guilty. Of course it's a crime. The example, we're talking about loss, though. Loss is critical here. Just to give you a simple example here. If you hire me, the government hires me to build a road, gives me $10 million, and I build the road. I build it. And it turns out later that I didn't have the necessary licenses. But they got the road for $10 million. They got a $10 million road, and you can't tell the difference. Is there a crime? Absolutely there's a crime. What's the loss? Zero. The loss is zero. But it was a $10 million fraud, and shouldn't the sentencing court be able to sentence you according to a $10 million fraud, even though you built a beautiful road? Yes, the court certainly can take into account the fact that there was HHS is important, Head Start is important, lots of millions of dollars were involved. But it can't suggest that there was loss. Let me give you, because I think part of what the government is doing here is not focusing on what they actually said. What they actually said, I'll just give you a couple examples. They said that there was a misuse of millions of dollars worth of federal Head Start funds. They also said that.  Is that a true statement? There wasn't a misuse of millions of dollars of Head Start funds. There was a misuse in the sense that if there had been proper representations of money, it wouldn't have been issued at all. It might have gone to somebody else. Your Honor, that's not loss. That's not loss. Maybe let me ask the question another way. Are you trying to say that the plea agreement stipulated that the only harm in this case is the loss pursuant to the agreement's guideline calculation? Is that what you're arguing? There's no other harm, Your Honor, here. This is not like an assault where there's a financial harm, there's also a physical harm. Or let's just say, you know, affinity crimes where maybe there's a trust in a certain individual and that person was betrayed and that feels bad. The government here is handing out money. It's a crime. There's no question about it. But the government, let me just give you another quick example. The government said here that there was an improper diversion of $2.5 million to Mr. Wertzberger. It can't say that. It agreed that the loss was $1.1 million, the misapplication $1.1. How can it say there was an improper diversion of $2.5? Okay. I'm going to ask them a different question. Under your argumentation or under your theory, can you give me an example that you think would be a valid 3553A argument for an upward departure in this case, given how tightly you're arguing this? You want me to argue why there should be an upward departure? No, no, no. I'm asking like I am worried that your position makes it very hard to understand how somebody can make any 3553A arguments, which I think you can't dispute. The plea agreement contemplates them being doing so. So I'm trying to figure out what is the daylight between what you said that they have done that is improper and what you can't disagree is in the plea agreement that allows them to do. I can think of that as an example, but you're welcome to articulate a standard. However, you think you can answer the question. I think if the government said here that these contracts involve millions of dollars or the government says the HHS program or Health Star program is very important, gives services to many, many children, I think that would be fine, too. What it can't do, there's a line here in a first-trigger case called Miranda-Martinez. It's not in our brief, but it's 790 F3rd 275. It says, when a prosecutor gratuitously offers added detail, garbed in implicit advocacy, then a court could find that there's a breach. That's what happened here. Additional details were added here that are not relevant. Why is it relevant to say that $10.2 million, $10.2 million was obtained by the defendant? What's the purpose of that other than to suggest that, Judge Reardon, I know we agreed that there was a loss at zero, but hint, hint, you should know there really was more. There was no reason to mention that detail. On the waiver point, Your Honor, I just want to mention the waiver, nobody found waiver below. The government, if there was waiver, the government waived the waiver. Okay. Thank you so much. This has been very vigorously argued, and we will take this under advice. Thank you, Your Honors.